John C. Kelly (012770)
Marvin C. Ruth (024220)
Katherine L. Hyde (025441)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 224-0999
F: (602) 224-6020
jkelly@cblawyers.com
mruth@cblawyers.com
khyde@cblawyers.com
*Attorneys for Applicants*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>HOME OPPORTUNITY, LLC,<br><br>Debtor. | Chapter: 7<br><br>Case No. 2:21-bk-04924-EPB<br><br>**DECLARATION OF PATRICK CARDON IN SUPPORT OF APPLICATION CONFIRM ABSENCE OF AUTOMATIC STAY WITH RESPECT TO DEPOSIT ACCOUNTS HELD SOLELY BY APPLICANTS AT WESTERN ALLIANCE BANK** |
| WINDOW ROCK INVESTMENT OPERATIONS, LLC, a Delaware corporation; DIBS US, INC., a Delaware corporation; CADI US, LLC, a Delaware limited liability company; WRCOF ASSET TRUST 2017-1, a Delaware statutory trust; and CREDIT OPPORTUNITY HOLDINGS, LLC, a Delaware limited liability company,<br><br>Applicants,<br><br>v.<br><br>HOME OPPORTUNITY, LLC, Debtor; CHAPTER 7 TRUSTEE, ROBERT A. MACKENZIE,<br><br>Respondents. | |

{00560247.2 }

I, Patrick Cardon, declare as follows:

1. I am the manager of Kastlerock LLC ("Kastlerock"), an Arizona limited liability company.

2. Kastlerock is the manager of Capital Rock Holdings, LLC ("Capital Rock"), a Delaware limited liability company.

3. Capital Rock is the sole member of Window Rock Capital Partners, LLC ("WRCP"), a Delaware limited liability company.

4. WRCP is the member of Window Rock Manager, LLC ("WRM"), a Delaware limited liability company.

5. WRM is the manager of Window Rock Investment Operations, LLC ("WRIO"), a Delaware limited liability company authorized to do business and doing business in Maricopa County, Arizona. WRIO is a real estate investment trust ("REIT") which holds investments made by third-party investors in loans secured by real estate.

6. WRCP is the sole director of DIBS US, Inc. ("DIBS"), a Delaware corporation authorized to do business and doing business in Maricopa County, Arizona. DIBS is a taxable REIT subsidiary, which holds investments in real properties.

7. I am the manager of CADI US, LLC ("CADI"), a Delaware limited liability company authorized to do business and doing business in Maricopa County, Arizona. CADI is an investment company which holds investments in private equity.

8. WRIO is the member of Credit Opportunity Holdings, LLC ("COH"), a Delaware limited liability company authorized to do business and doing business in Maricopa County, Arizona. COH is a wholly-owned subsidiary of WRIO. It holds investments in Delaware statutory trusts.

9. COH is the depositor of WRCOF Asset Trust 2017-1 ("WAT2017-1"), a Delaware statutory trust authorized to do business and doing business in Maricopa County,

Arizona. WAT2017-1 is a wholly-owned subsidiary of COH. It holds investments in loans secured by real estate.

10. WRIO, DIBS, CADI, WAT2017-1 and COH shall be collectively referred to herein as the "WR Entities."

11. I have personal knowledge of the facts set forth herein.

**The Debtor and the WR Entities**

12. I am personally familiar with the operations of Home Opportunity, LLC, a Delaware limited liability company (the "Debtor"). The Debtor is owned and managed by Red Rock River, LLC ("RRR"), a Delaware limited liability company with its principal place of business in Maricopa County, Arizona. RRR is managed by WRM.

13. None of the WR Entities is or has ever been a member or manager of the Debtor or RRR.

14. None of the WR Entities has or has ever had any ownership interest in the Debtor or RRR.

15. The Debtor is not and has never been a member or manager of any of the WR Entities.

16. The Debtor has no and has never had any ownership interest in any of the WR Entities.

**The Western Alliance Bank Loan to Debtor and RRR**

17. On June 22, 2017, the Debtor and RRR entered into a Loan and Security Agreement (the "Loan Agreement") and signed a Promissory Note (the "Note") in favor of Western Alliance Bank dba Alliance Bank of Arizona (the "Bank"). Pursuant to the Loan Agreement and the Promissory Note, the Bank loaned the Debtor and RRR the sum of Eight Million and no/100 Dollars ($8,000,000.00) (the "Loan"). A copy of the Loan Agreement is attached as Ex. A. A copy of the Note is attached as Ex. B.

18. On August 5, 2019, after the Debtor and RRR paid off the Loan, the Bank closed the Loan account. A copy of the account closure letter is attached as Ex. M.

**The WR Accounts**

19. Approximately 10 months after the Loan was issued, the WR Entities agreed to open deposit accounts at the Bank.

20. On April 5, 2018, WRIO opened an analyzed business checking account (account no. 8011772657) at the Bank (the "WRIO Account"). A copy of the WRIO Limited Liability Company Banking Resolution and Account Agreement is attached hereto as Ex. C.

21. On April 5, 2018, DIBS opened an analyzed business checking account (account no. 8011773135) at the Bank (the "DIBS Account"). A copy of the DIBS Corporate Banking Resolution and Account Agreement is attached hereto as Ex. D.

22. On April 5, 2018, CADI opened an analyzed business checking account (account no. 8255051688) at the Bank (the "CADI Account"). A copy of the CADI Limited Liability Company Banking Resolution and Account Agreement is attached hereto as Ex. E.

23. On April 12, 2018, WAT2017-1 opened an analyzed business checking account (account no. 8869618183) at the Bank (the "WAT2017-1 Account"). A copy of the WAT2017-1 Unincorporated Association Banking Resolution and Account Agreement is attached hereto as Ex. F.

24. On April 12, 2018, COH opened an analyzed business checking account (account no. 8947213155) at the Bank (the "COH Account"). A copy of the COH Limited Liability Company Banking Resolution and Account Agreement is attached hereto as Ex. G.

25. The WRIO Account, the DIBS Account, the CADI Account, the WAT2017-1 Account and the COH Account shall be referred to herein, collectively, as the "WR Accounts."

26. None of the WR Accounts is held jointly by any of the WR Entities and the Debtor or RRR.

27. All of the Debtor's assets and funds have always been kept separate from, and segregated from, Applicant's funds and assets, and the WR Accounts have always been maintained separately from the Debtor's bank accounts.

28. Following the payoff and cancellation of the Loan, and for purposes of convenience only, the WR Entities continued to maintain the WR Accounts at the Bank.

29. The WR Entities maintain and use the WR Accounts as operations accounts. Having unobstructed access to and use of the WR Accounts and the funds therein is critical to WR Entities' business and continuing operations.

30. As of the date of this Declaration, the WR Entities have more than $1,000,000.00 (collectively) on deposit in the WR Accounts. Attached hereto as Ex. H are copies of the most recent WR Account statements.

## The WR Accounts are Frozen

31. Joseph Ware, as Independent Administrator of the Estate of Evoughn Ware ("Ware") sued the Debtor, RRR, and three other entities in Cook County (Illinois) Circuit Court, seeking damages for the death of his mother, Evoughn Ware, who died in a house fire in October of 2016 (the "Illinois Lawsuit"). RRR and the three other entities were dismissed from the Illinois Lawsuit on summary judgment. The case proceeded to a jury trial against the Debtor alone.

32. None of the WR Entities were ever a party to the Illinois Lawsuit.

33. After a trial in January of 2020, Ware obtained a judgment against the Debtor only, in the amount of $9,689,948.18 (the "Judgment").

34. On May 26, 2021, Ware filed a "Motion for Entry of Turnover Order" (the "Turnover Motion") in Cook County (Illinois) Circuit Court (the "Circuit Court"). A copy of the Turnover Motion is attached hereto as Ex. I.

35. On or about May 26, 2021, Ware sent a copy of the Turnover Motion and a "Notice of Remotely Conducted Proceedings" (the "Notice") to the Bank. A copy of the Notice is attached hereto as Ex. J to Declaration.

36. On June 10, 2021, after receiving the Turnover Motion and Notice, the Bank placed an administrative hold on all of the WR Accounts.

37. As a result of the administrative hold, the WR Accounts were frozen, and the WR Entities have been denied access to the WR Accounts or to their funds in the WR Accounts.

38. The Bank has stated that it placed an administrative hold on the WR Accounts and froze the WR Accounts because of the allegations made by Ware in the Turnover Motion, and because Ware created a purported dispute or conflict with regard to the WR Entities' right to access the WR Accounts and their funds. The Bank has stated that it froze the WR Accounts based upon standard language in the deposit account agreements for the WR Accounts, which provide as follows: "If Bank receives conflicting instructions or a dispute arises as to authorization with regard to the handling of the Account, you agree Bank may place a hold on the Account until such conflict or dispute is resolved to Bank's satisfaction and Bank will not be liable for dishonored items as a result of such hold."

39. On June 30, 2021, counsel for the WR Entities sent counsel for Ware a letter explaining that Debtor had no interest in the WR Accounts and requesting that Ware withdraw the Turnover Motion. See 6/30/21 Letter from John C. Kelly and Marvin Ruth to Matthew Elster, attached hereto as Ex. K. In his July 1, 2021 response to the letter, Ware refused to withdraw the Turnover Motion or otherwise assist in removing the administrative hold on the WR Accounts. See 7/1/21 Email from Matthew Elster to John C. Kelly, attached hereto as Ex. L.

40. As of the date of this Declaration, the WR Accounts remain frozen and the WR Entities cannot access their own funds. The WR Entities have been, and continue to be, harmed by their inability to access the WR Accounts.

41. I certify and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated this 22nd day of July, 2021.

/s/ *Patrick Cardon*
Patrick Cardon