Exhibit K

# Exhibit K



**John C. Kelly**
jkelly@cblawyers.com
**Marvin Ruth**
mruth@cblawyers.com
PH. (602) 224-0999
FAX (602) 224-6020

2800 N. Central Ave., Suite 1900
Phoenix, AZ 85004-1241
CBLAWYERS.COM

June 30, 2021

**VIA EMAIL AND U.S. MAIL**

Matthew D. Elster
Beermann LLP
161 N. Clark St., Ste. 3000
Chicago, IL 60601
melster@beermannlaw.com

Re: Demand for Withdrawal of Motion for Entry of Turnover Order

Dear Mr. Elster:

This firm represents Window Rock Investment Operations, LLC; Dibs US, Inc.; Cadi US, LLC; WRCOF Asset Trust 2017-1; and Credit Opportunity Holdings, LLC (collectively, the "WR Entities"), each of whom maintains a bank account (the "Window Rock Accounts") at Western Alliance Bank ("Alliance").

On May 26, 2021, your client Joseph Ware, as Independent Executor of the Estate of Evoughn Ware ("Ware"), filed a Motion for Entry of Turnover Order (the "Motion") in Cook County Circuit Court, No. 2017 L 6009. In that Motion, Ware seeks a court order directing Alliance to turn over funds belonging to the WR Entities that are maintained in any bank accounts at Alliance that belong to the WR Entities. As a result of that Motion, and as a matter of bank policy, Alliance has frozen all of the Window Rock Accounts, causing tremendous hardship and continuing and significant damages to the WR Entities.

As you know, all proceedings on the Motion have been stayed due to the bankruptcy filing of Home Opportunity, LLC ("HO"). Nonetheless, and for the following reasons, we hereby demand that you immediately withdraw the Motion and direct Alliance to immediately unfreeze the Window Rock Accounts.

In the Motion, you contend that the Window Rock Accounts were pledged by HO in June of 2017 as collateral for a loan from Alliance. That contention is completely untrue. No Window Rock Accounts or other assets belonging to the WR Entities were ever "pledged for" or in any way, shape or form transferred to HO. Those accounts and the funds in them belong and have always belonged to the WR Entities.

When you signed the Motion, you certified that you had read it, that to the best of your knowledge, information, and belief, formed after reasonable inquiry, it was well grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it was not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *See* Ill. Sup. Ct. Rule 137. See also Rule 11, Ariz. R. Civ. P.[1] If a pleading (such as the Motion) is signed and filed in violation of that rule, sanctions may be imposed against a party and his counsel. For the following reasons, we submit that there was no good faith basis to argue that the WR Entities somehow have an obligation to satisfy the judgment against HO, or that their assets or bank accounts can somehow be attached in connection with a judgment against a completely separate entity (HO). If necessary, we will ask Illinois counsel to intervene and seek the dismissal of the Motion and sanctions against your client and your firm – or we will take up that issue with the bankruptcy court in Arizona.

In the Motion, you claim that Alliance's response to a request for information disclosed that the WR Entities were "pledged accounts." You attached copies of the loan documents produced by Alliance – <u>none of which support that claim</u>. Not one of those documents – neither the Promissory Note nor the Loan and Security Agreement - even mentions any of the WR Entities – nor should they, as the WR Entities were not a party to that transaction, did not provide security for that transaction, and did not pledge or transfer any assets to or on behalf of HO in that transaction.

The <u>only</u> documents which Alliance produced in response to your broad request for information that in any way reference the WR Entities were copies of bank account statements for the WR Entities, which make no mention of HO or Red Rock River, LLC ("RRR"). We do not know why Alliance provided you with copies of those bank account statements. We believe that was a mistake. Regardless, we are certain, despite what you suggest in your Motion, that Alliance did not state that those bank accounts somehow belonged to HO and that Alliance did not state that those accounts were pledged as collateral for a HO loan. There is no possible way that Alliance could have made that statement.

**A. The WR Entities are Separate and Distinct Entities from HO or RRR.**

HO is a Delaware limited liability company. None of the WR Entities are members or managers or have any ownership interest whatsoever in HO. Similarly, HO is not a member or manager and does not have any ownership interest in any of the WR Entities. <u>HO and the WR Entities are completely separate legal entities</u>.

---

[1] The WR Entities reserve all rights with respect to the venue and jurisdiction in which they may seek relief against Ware and his counsel.

RRR is a Delaware limited liability company. None of the WR Entities are members or managers or have any ownership interest whatsoever in RRR. Similarly, RRR is not a member or manager and does not have any ownership interest in any of the WR Entities. RRR and the WR Entities are completely separate legal entities.

**B. Alliance's Banking Relationship with HO and RRR Does Not Make the WR Entities Responsible for HO's or RRR's Obligations.**

**1. The Window Rock Accounts**

The WR Entities each maintain a separate bank account at Alliance:

| Account Name | Account Number | Owner |
|---|---|---|
| WRIO Operating | 8011772657 | Window Rock Investment Operations, LLC |
| DIBS Operating | 8011773135 | Dibs US, LLC |
| Cadi US | 8255051688 | Cadi US, LLC |
| WRCOF 2017-1 | 8869618183 | WRCOF Asset Trust 2017-1 |
| Credit Opportunity Holdings | 8947213155 | Credit Opportunity Holdings, LLC |

Each of those accounts is solely owned by each respective WR Entity. None of the Window Rock Accounts are jointly held by HO or RRR. Neither HO nor RRR signed any account ownership documents. Neither HO nor RRR is listed as an authorized party on any of the signature cards for those accounts. The WR Entities did not provide Alliance with any documents granting HO or RRR an interest in, or control over, the Window Rock Accounts. In short, neither HO nor RRR owns or otherwise has any interest in the Window Rock Accounts.

**2. The Loan Agreement with HO and RRR**

On June 22, 2017, Alliance agreed to lend HO and its sole member, RRR, $8.0 million (the "Loan"). The Loan is evidenced by, among other things, a Promissory Note (the "Note") and a Loan and Security Agreement (the "Loan Agreement"), wherein HO and RRR are collectively referred to as "Borrower." None of the relevant Loan documents suggest that HO owns an interest in the Window Rock Accounts, or that HO or RRR pledged the Window Rock Accounts as security for the Loan. They didn't. None of the WR Entities were a party to that Loan, to the Note, or to the Loan Agreement.

To the contrary: among the relevant provisions:

- The Promissory Note defines Collateral as "certain personal property of *Borrower*," which includes "a security interest in, all monies, securities and other property *of Borrower* now or hereafter in the possession of or on deposit with Alliance…including, without limitation, any account or deposit held jointly by

*Borrower* with any other person or entity…" **<u>The Promissory Note does not define Collateral to include accounts held by any of the WR Entities</u>**.

- The Loan Agreement defines "Collateral" as "the Pledge Note Files, the REO Files, the funds in the Collection Account and all products and proceeds whether tangible or intangible, of any of the foregoing, and any and all accounts, money, deposit accounts, judgments, attachments, claims for relief, levies, causes of action or other tangible or intangible property, resulting from the sale, foreclosure, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof." Loan Agreement at 3. **<u>Again - the Loan Agreement does not include deposit accounts held by the WR Entities</u>**. **<u>It only includes accounts, money or deposit accounts owned and held by the Borrower.</u>**

- The Loan Agreement grants Alliance a security interest in "all Collateral without further act on the part of Alliance or Borrower." Loan Agreement at Section 4.1. **<u>The Loan Agreement does not grant Alliance any security interest in the Window Rock Accounts</u>**.

- The Loan Agreement grants Alliance a right to "set off and apply against the Obligations…any and all deposits…or other sums at any time credited by or owing from Alliance to any Borrower…" Loan Agreement at Section 4.10. **<u>Again, the Loan Agreement does not grant Alliance a right to set off any obligations owed under the Note or Loan Agreement against deposits held by anyone other than the Borrowers – much less the WR Entities. The WR Entities were not a party to the Loan and did not guarantee or otherwise secure the Loan.</u>**

- Section 9.1 of the Loan Agreement describes Alliance's rights & remedies regarding Borrower's deposit accounts held at Alliance. **<u>Alliance's rights & remedies apply only to accounts of *Borrower* and do not include any accounts of the WR Entities</u>**.

In short, neither the Note nor the Loan Agreement (i) grant Alliance any security interest in the Window Rock Accounts, (ii) provide that the Window Rock Accounts are assets of HO, or (iii) constitute a pledge of the Window Rock Accounts as collateral to secure the Loan. <u>Nor could they, as the WR Entities were never and are not parties to the Note or the Loan Agreement</u>. For Ware to state or suggest otherwise to the Court is sanctionable.

Indeed, the only place that the WR Entities or their Accounts are (arguably) mentioned in the Loan documents is in Section 6.4 of the Loan Agreement, which provides that HO, RRR, "and its affiliates" shall maintain combined aggregate deposit account balances of not less than $1,000,000.00. *See* Section 6.4 of the Loan Agreement.

We presume that Alliance provided you with copies of statements regarding the bank accounts maintained at Alliance by the WR Entities because those statements were in Alliance's Loan file. If so, that could only be because Alliance tracked those accounts to make certain that HO, RRR "and their affiliates" collectively kept at least $1,000,000 on hand in the bank at all times. But that liquidity obligation does not constitute a pledge of those accounts by the "affiliates" as collateral. Nor does it make those accounts assets of HO or RRR. Nor does it permit Alliance to seize the funds in those accounts in the event of a default by HO or RRR. Indeed, if any (or all) of the WR Entities closed their accounts and removed their funds from Alliance, and if the aggregate balance on hand for HO, RRR and their affiliates dipped under $1,000,000 as a result, Alliance's only remedy would be to increase the interest rate on the Note by one half of one percent (0.5%) per annum.

All of that is plainly set forth in the Loan documents attached to the Motion. No other reasonable conclusion could have been reached from even a cursory review of the documents.

**C. The Judgment and the Motion**

Ware does not hold a judgment against any of the WR Entities (or, for that matter, against RRR, HO's co-borrower on the Note). The WR Entities were not a party to the lawsuit and are not judgment debtors under the judgment. As set forth in the Motion, **the only judgment debtor is HO.**

Despite that fact, and through the Motion, Ware apparently intends to try to enforce his judgment against assets owned by the WR Entities and held in Alliance. In doing so, he has made a number of false assertions in the Motion.

For example, Ware asserts, on page 1, paragraph 1, that "[i]n 2017, HO pledged 20 bank accounts at WAB as collateral to secure an $8 million loan, executing documents evincing its ownership of those accounts." Mot. at 1. Ware than repeats that fiction two pages later, again asserting that "HO pledged as collateral 20 bank accounts in which it had an interest with an aggregate balance of over $10,0000 as of the fall of 2017." Mot. at 3. In support of that statement, Ware attaches account statements from each of the purported "pledged accounts." Mot. at 3, Exh. B. As stated above, however, nothing in the Note or Loan Agreement states that those Accounts were ever pledged as security. They weren't. Nothing in those account statements suggests that HO even has an interest in those Accounts. It doesn't.

Ware then concludes, in summary fashion (at 5), that "the 20 Pledged Accounts and their holdings are assets of the judgment debtor, HO." That statement is blatantly false. HO could not logically (and did not) pledge assets which it did not own as collateral for the Loan. The fact is that the Window Rock Accounts were never pledged as collateral, whether by HO or by anyone else, and the Window Rock Accounts were not HO's accounts to pledge in any event. The entire premise of the Motion is incorrect, yet the WR Entities have now gone more

than one month without access to their money because Alliance had no choice but to freeze the accounts upon receipt of the Motion.

**D. Demand**

It is axiomatic that a judgment creditor can only proceed against assets owned by the judgment debtor. Ware, in this case, has no right to seize, attach, or interfere with bank accounts or monies held by third parties, whether they are affiliates of HO or not.

The WR Entities are separate legal entities from HO. Each maintains its own separate bank account at Alliance. There is simply no legal basis or rationale for Ware to allege that those accounts can somehow be attached to satisfy the judgment against HO. There is simply no legal basis for Ware to seek to compel Alliance to freeze the Window Rock Accounts or to turn over assets belonging to the WR Entities in order to satisfy a debt owed by HO.

Every day that the Window Rock Accounts remain frozen – every day that the WR Entities are denied access to those bank accounts and to the funds in those accounts - causes significant and continuing harm to the WR Entities. Without access to the Window Rock Accounts, they cannot conduct business, or satisfy their obligations to their own debtors or shareholders. For that, we hold Ware responsible.

For the reasons stated herein, we demand that Ware immediately withdraw the Motion, and that Ware direct Alliance to immediately release any hold that exists on the Window Rock Accounts, so that the WR Entities may have prompt and unfettered access to those Accounts and to their funds.[2] Failure to do so will result in litigation against Ware and the seeking of sanctions, as described above.

We look forward to your prompt response.

Sincerely,

John C. Kelly
Marvin Ruth

JCK:slm
Cc: WR Entities

[2] The WR Entities reserve all rights with respect to the damages they have suffered, and continue to suffer, while Alliance withholds their monies from them based upon the Motion filed by Ware and the actions taken by Ware in connection with the Motion.